IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

| | | |
|---|---|---|
| STATE OF TENNESSEE | ) | For Publication |
| | ) | |
| Appellee | ) | Filed: December 2, 1996 |
| | ) | |
| v. | ) | Williamson County |
| | ) | |
| JOHN MICHAEL DENTON | ) | Hon. Henry D. Bell, |
| | ) | Judge |
| Appellant | ) | |
| | ) | No. 01-S-01-9509-CC-00152 |


| | | |
|---|---|---|
| WILLIAM DOUGLAS BROWN | ) | |
| | ) | |
| Appellant | ) | |
| | ) | |
| v. | ) | Williamson County |
| | ) | |
| STATE OF TENNESSEE | ) | Hon. Cornelia A. Clark, |
| | ) | Judge |
| Appellee | ) | |
| | ) | No. 01-S-01-9509-CC-00153 |


For Appellants Denton and Brown:   For Appellee:

JOHN H. HENDERSON
District Public Defender
Franklin, Tennessee

CHARLES W. BURSON
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General



**FILED**

**December 2, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

GORDON W. SMITH
Associate Solicitor General
Nashville, Tennessee

JOSEPH D. BAUGH, JR.
District Attorney General

ERIC L. DAVIS
Asst. District Attorney General
Franklin, Tennessee


O P I N I O N


Affirmed in Part and Reversed in Part (as to Denton)
Affirmed (as to Brown)          BIRCH, C.J.

We granted review and consolidated these cases in order to consider the circumstances under which imposition of two convictions resulting from a "single" criminal act may violate the double jeopardy and due process clauses of the state and federal constitutions in light of State v. Anthony, 817 S.W.2d 299 (Tenn. 1991).

William Douglas Brown was convicted of first-degree murder (felony)[1] and armed robbery accomplished by the use of a deadly weapon.[2] In this post-conviction proceeding, he contends that one of the two convictions is barred by double jeopardy. In addition, Brown insists that these convictions violate his due process rights in general and under the rationale of Anthony, 817 S.W.2d at 299. However, the record shows that Brown failed to file his petition for post-conviction relief within the statutory period required by law. He insists, nevertheless, that our holding in Burford v. State, 845 S.W.2d 204 (Tenn. 1992), excuses his failure to comply with the statute of limitations and that he should receive the benefit, if any, of our holding in Anthony.

After a painstaking examination of the record and a thorough consideration of the issues presented, we find that Brown's double jeopardy claim has been "previously determined"[3] and

---

[1]Tenn. Code Ann. § 39-2-202 (1982).

[2]Tenn. Code Ann. § 39-2-501 (1982).

[3]Tenn. Code Ann. § 40-30-112 (1990).

2

that his general due process claim is time-barred.[4]  Further, because <u>Anthony</u> did not announce a new rule of constitutional law, it does not apply to Brown's convictions.  Accordingly, as to Brown, the judgment of the Court of Criminal Appeals is affirmed.

John Michael Denton was convicted of aggravated assault,[5] attempted voluntary manslaughter,[6] and possessing a weapon with the intent of using it in the commission of a criminal offense.[7]  Denton contends that his due process rights under <u>Anthony</u> and his rights under the double jeopardy clauses of the federal and state constitutions bar the imposition of the three convictions.

Following careful examination and full consideration of the record and the issues, we conclude that only one of the three convictions can survive double jeopardy scrutiny.  Accordingly, we affirm the conviction and sentence imposed for aggravated assault.  We reverse the convictions for attempted voluntary manslaughter and possessing a weapon intended for use in the commission of a criminal offense.  We vacate the sentences thereupon imposed and dismiss the respective indictments.[8]

---

[4]Tenn. Code Ann. § 40-30-102 (1990).

[5]Tenn. Code Ann. § 39-13-102(a)(1)(b)(1991).

[6]Tenn. Code Ann. § 39-12-101(a) (1991).

[7]Tenn. Code Ann. § 39-17-1307(c) (1991).

[8]The Court of Criminal Appeals reversed Denton's conviction for carrying a weapon.  Although we agree with the result reached by the intermediate court, we reverse this conviction on different

I

We begin with <u>Brown</u>, the simpler of the two cases, and we must first determine which issues are properly before us. In August 1985, Brown was convicted of first-degree murder (felony) and armed robbery. He received a life sentence in each case, to be served consecutively. Specifically rejecting Brown's double jeopardy challenge, the Court of Criminal Appeals affirmed the convictions on January 13, 1988.[9] Subsequently, this Court denied permission to appeal on April 4, 1988. On September 23, 1991, we released <u>Anthony</u>, holding that when the offense of kidnapping is committed incidentally to another crime, in that case, robbery, and the attendant detention did not substantially increase the risk of harm beyond that necessarily present in the accompanying felony, the due process clause of the Tennessee Constitution barred the conviction for kidnapping. <u>Anthony</u>, 817 S.W.2d at 306. In September 1992, Brown filed this post-conviction petition.

Brown's double jeopardy claim was considered by the Court of Criminal Appeals in his direct appeal;[10] therefore, it is a

grounds. <u>See</u> <u>infra</u>, Part IV.

[9]<u>State v. Brown</u>, 756 S.W.2d 700 (Tenn. Crim. App. 1988).

[10]<u>State v. Brown</u>, 756 S.W.2d 700 (Tenn. Crim. App. 1988).

"previously determined" issue, and we will not consider it on post-conviction.  Tenn. Code Ann. § 40-30-112 (1990).[11]

The claim based on general due process principles could have been raised at any time during the trial or process of direct appeal.  Instead, Brown delayed almost eighteen months after the limitations period expired before raising this issue in his post-conviction petition.  Because Brown could have raised this issue in a timely fashion but did not, we are statutorily barred from any further consideration of it.  Tenn. Code Ann. § 40-30-102 (1990).

Because Anthony was decided after Brown's conviction became final, we must determine whether Anthony announced a new rule of constitutional law and, if so, whether that rule should be applied retroactively.  Meadows v. State, 849 S.W.2d 748 (Tenn. 1993).

In Teague v. Lane, 489 U.S. 288, (1989), the United States Supreme Court stated:

> [A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government.  To put it differently, a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final.

[11]Even if we were to consider this issue on its merits, it would not provide a basis for reversal of Brown's convictions. Felony murder and robbery are distinct offenses and do not require the same evidence to prove. Further, the statutes defining these offenses serve different purposes.

Id. at 301. (citations omitted and emphasis in original). We adopted and applied this test in Meadows, 849 S.W.2d at 751, and we apply it again here with respect to Anthony.

In Meadows, the Court determined that State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989), announced a new rule of constitutional law on the standard by which to measure probable cause under Tennessee law. Applying the Teague definition of a new rule, we found that the courts of Tennessee had "continually followed federal precedent with respect to the sufficiency of affidavits used to obtain search warrants until this Court's opinion in State v. Jacumin. . . ." Meadows, 849 S.W.2d at 752. Thus, as the opinion in Jacumin stated a probable cause test different from the test under federal law, Jacumin broke new ground, and its result was not dictated by precedent. Id. at 753.

Such is not the case with Anthony. Prior to Anthony, there were two lower court opinions that applied the same rule. See Brown v. State, 574 S.W.2d 57 (Tenn. Crim. App. 1978) and State v. Rollins, 605 S.W.2d 828 (Tenn. Crim. App. 1980). Further, although there was a dearth of direct Tennessee case law on the issue, numerous other jurisdictions had addressed the relationship between kidnapping and other felonies that characteristically involved some detention of the victim. While the case law from other state jurisdictions does not constitute "precedent" within the Meadows/Teague rule, such analyses of the issue were widespread and represented a body of persuasive authority available to the

6

petitioner. In light of the previous intermediate court opinions, we hold that <u>Anthony</u> did not announce a new rule.

As <u>Anthony</u> did not announce a new rule of constitutional law, consideration of this issue in Brown's case is barred by Tenn. Code Ann. § 40-30-102 (1995). The judgment of the Court of Criminal Appeals dismissing the petition is, accordingly, affirmed.

II

The salient facts of record in Denton's case establish that Brook Thompson, the victim, and some friends organized a graduation party. After midnight as the party was ending, Thompson was struck in the head with a bottle; Denton, however, did not participate in this altercation. As Thompson was leaving the party to obtain medical treatment, he was approached by a man he later positively identified as Denton. According to Thompson, Denton, armed with a long pointed object, "came around, he cut me right there (indicating), and came around and stabbed me and then jumped in front of me and said come on let's fight."

Denton initially was indicted for attempted second-degree murder, aggravated assault by use of a deadly weapon, and carrying a weapon intended for use in the commission of an offense. At the conclusion of the trial, the jury found Denton guilty of aggravated assault, attempted voluntary manslaughter, and carrying a weapon

7

intended for use in the commission of an offense. The trial court sentenced Denton as a Range I standard offender to six years confinement for the aggravated assault, four years for the attempted voluntary manslaughter, and two years for the weapon offense. The sentence for attempted voluntary manslaughter was ordered to be served consecutively to the sentence for aggravated assault; the sentence for the weapon offense was ordered to be served concurrently with the other two sentences--an effective sentence of ten years.

On direct appeal, the Court of Criminal Appeals reversed the weapon conviction, finding that the weapon offense was "essentially incidental" to the aggravated assault offense under Anthony. Applying the Blockburger[12] test strictly, the intermediate court concluded that aggravated assault and attempted voluntary manslaughter were different offenses for double jeopardy purposes; therefore, the convictions for both offenses were affirmed.

Denton, as stated, attacks the convictions on due process and double jeopardy grounds. Although the Court of Criminal Appeals' opinion relies on Anthony to overturn Denton's conviction for the weapon offense, we prefer to base our holding on Article I, § 10 of the Tennessee Constitution.

---

[12]Blockburger v. United States, 284 U.S. 299 (1932).

Our disposition of the double jeopardy issue, see infra, Parts III and IV, also obviates the need to determine whether Denton's convictions violate, either generally or under the holding of Anthony, the due process clause of the Tennessee Constitution.

We note that in Anthony, we held that when kidnapping is "essentially incidental" to another offense--most notably, robbery and rape, then the due process provision of the Tennessee Constitution prohibits a conviction for kidnapping. While our decision in Anthony addressed the particularly anomalous nature of the kidnapping statute, it is conceivable that the principle of Anthony could apply to circumstances involving offenses other than kidnapping.

III

The double jeopardy clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. . . ." Article 1, § 10 of the Tennessee Constitution provides that "no person shall, for the same offense, be twice put in jeopardy of life or limb."

As we have noted many times, three fundamental principles underlie double jeopardy: (1) protection against a second prosecution after an acquittal; (2) protection against a second prosecution after conviction; and (3) protection against multiple punishments for the same offense.[13] Whalen v. United States, 445 U.S. 684, 688 (1980); United States v. Wilson, 420 U.S. 332, 343 (1975); North Carolina v. Pearce, 395 U.S. 711, 717 (1969). In this case, the issue falls into the third category, i.e., multiple punishments for the "same" offense; this particular area of double jeopardy law has presented courts with the greatest challenge.

Over one hundred years ago, the United States Supreme Court rejected a literal reading of the phrase "same offense." In In re Nielsen, 131 U.S. 176 (1889), the Court held that the federal statutory offenses of cohabitation and adultery defined the "same" offense, notwithstanding the fact that they were distinct statutory offenses with differing elements. As a result, the Court barred prosecution of Nielsen for adultery after he had already been tried for and convicted of cohabitation. More recently, in Brown v. Ohio, 432 U.S. 161, 169 (1977), the Court reiterated that offenses

_____

[13]There are, of course, exceptions to the prohibitions against successive prosecutions. For instance, the double jeopardy guarantee does not prohibit retrial after a conviction has been set aside at a defendant's request. North Carolina v. Pearce, 395 U.S. 711, 720 (1969). A defendant who has already been convicted of a lesser offense may be prosecuted on the greater offense if an element of the greater offense had not occurred at the time of prosecution for the lesser offense. Jeffers v. United States, 432 U.S. 137 (1977); Diaz v. United States, 223 U.S. 442 (1912); State v. Mitchell, 682 S.W.2d 918, 919 (Tenn. 1984).

need not be the exact same statutory offenses to be the "same" under the double jeopardy clause and barred successive prosecution and cumulative punishment for greater and lesser included offenses. See also Jeffers v. United States, 432 U.S. 137 (1977).

The key issue in multiple punishment cases is legislative intent. Albernaz v. United States, 450 U.S. 333, 344 (1981); State v. Phillips, 924 S.W.2d 662 (Tenn. 1996). In Garrett v. United States, 471 U.S. 773, 778 (1985), the Supreme Court stated:

> Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense. If [the legislature] intended that there be only one offense--that is, a defendant could be convicted under either statutory provision for a single act, but not under both--there would be no statutory authorization for a subsequent prosecution after conviction of one of the two provisions, and that would end the double jeopardy analysis.

The presumption is, of course, that the legislature does not ordinarily intend to punish the same offense under two different statutes.

In Tennessee, whether two offenses are the "same" for double jeopardy purposes depends upon a "close and careful analysis of the offenses involved, the statutory definitions of the crimes, the legislative intent and the particular facts and circumstances."

11

State v. Black, 524 S.W.2d 913, 919 (Tenn. 1975).[14] This analysis

is guided in part by the application of the test announced in

Blockburger v. United States:

> [W]here the same act or transaction
> constitutes a violation of two distinct
> statutory provisions, the test to be applied
> to determine whether there are two offenses or
> only one is whether each provision requires
> proof of an additional fact which the other
> does not.

Black, 524 S.W.2d at 919 (quoting Blockburger v. United States, 284

U.S. 299, 304 (1932)). The Blockburger test is useful for

determining legislative intent, but it is not conclusive.


In Black, the Court specifically relied on Dowdy v.

State, 158 Tenn. 364, 13 S.W.2d 794 (1928), and Duchac v. State,

505 S.W.2d 237 (Tenn. 1973), commenting that "the principles

formulated in the Dowdy case . . . and reaffirmed in the Duchac

case are correct." Black, 524 S.W.2d at 919. We turn our

attention now to these two early cases.


In Dowdy, this Court set down one of the guiding

principles for resolving double jeopardy punishment issues:

> "[e]ven if it be conceded that two convictions
> and two punishments may be had in any case
> upon separate counts, the practice is not

_____

[14]When the legislature has made its intent clear that
cumulative punishment is intended, such as in the case of felony
murder and the underlying felony, see State v. Blackburn, 694
S.W.2d 934 (Tenn. 1985), our analysis under Black is pretermitted.

12

approved, and, certainly it must be clear that the offenses are wholly separate and distinct. . . ."

The power of election rests with the state, not the criminal, and the state should not split the transaction so as to subject the accused to cumulative sentences for the same offense or for different offenses involving the same act as a means of pyramiding punishment for two or more cognate offenses.

Dowdy, 13 S.W.2d at 795 (quoting Patmore v. State, 152 Tenn. 284, 277 S.W. 892, 893 (1925)); see also, State v. Goins, 705 S.W.2d 648, 650 (Tenn. 1986)(quoting Patmore).

In Duchac, the defendants were convicted of third-degree burglary and of carrying burglarious instruments. Duchac, 505 S.W.2d at 238. The defendants broke into a Coca-Cola bottling plant. When discovered by police, they fled out the back door leaving behind a cutting torch, tanks, a prybar, and a flashlight. Id. at 238-39. In determining whether the two convictions could stand, we stated:

the majority rule and clearly the rule in Tennessee is that the "same transaction" test is not the law, rather the proper test is directed to the identity of the offense and has been called the "same evidence" test. Simply stated the test is that:

". . . . A defendant has been in jeopardy if on the first charge he could have been convicted of the offense charged in the second proceeding.

"One test of identity of offenses is whether the same evidence is

13

> required to prove them.  If the same
> evidence is not required, then the
> fact that both charges relate to,
> and grow out of, one transaction,
> does not make a single offense where
> two are defined by the statutes.
> "If there was one act, one intent,
> and one volition, and the defendant
> has been tried on a charge based on
> that act, intent, and volition, no
> subsequent charge can be based
> thereon, but there is no identity of
> offenses if on the trial of one
> offense proof of some fact is
> required that is not necessary to be
> proved in the trial of the other,
> although some of the same acts may
> necessarily be proved in the trial
> of each."

Id. at 239 (emphasis added and citations omitted).  The Court then

compared the statutory elements of each offense and the proof used

to establish each at the trial of the matter and concluded:

> none of the evidence required to prove third
> degree burglary is necessary to make out a
> case of carrying burglarious instruments.  In
> addition, none of the evidence required to
> prove carrying burglarious instruments is
> necessary to prove commission of third degree
> burglary.  Therefore, the mere fact that both
> offenses grew out of a single criminal episode
> does not make them a single offense in this
> particular case.  This is not to say that
> under different facts and circumstances that a
> third degree burglary conviction could not bar
> a conviction for carrying burglarious
> instruments.  The peculiar facts of each case
> must be examined to properly ascertain whether
> the conviction of one would bar the other.

Id. at 240.  In denying the petition to rehear, the Court stated:

"the test is whether the same evidence is necessary to prove both

offenses.  Herein the same evidence was not necessary, therefore,

14

when directed to the identity of the offense, it is clear that the trial court was not in error." Id. at 241.

Blockburger, thus, provides us with an initial test for determining whether two offenses are, in the abstract, the "same" for double jeopardy purposes. Duchac provides criteria by which we analyze each case to determine whether the offenses are, under the particular circumstances of that case, the "same" for double jeopardy purposes. Black directs that the analysis begin with Blockburger but also clearly requires that the analysis proceed to the circumstances of each individual case. Black, 524 S.W.2d at 919.[15]

In Black, we applied the Blockburger test and found that armed robbery and assault with intent to commit murder in the second degree were not identical offenses. Id. at 920. Applying the principles of Duchac, we further found that "[t]he same evidence was not required to prove the armed robbery as was required to prove the assault with intent to murder"; therefore, the two convictions did not violate double jeopardy. Id.

---

[15]Our decision today is predicated on Article I, § 10 of the Tennessee Constitution, and we acknowledge that under the federal double jeopardy clause, the result would be different. See United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). In Dixon, the Supreme Court overruled Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), and limited federal double jeopardy analysis to the Blockburger test. Dixon, 113 S.Ct. at 2860. Although in State v. Stephenson, 878 S.W.2d 530 (Tenn. 1994), we applied Blockburger to determine the double jeopardy issue, Stephenson involved a federal double jeopardy issue.

In addition to comparing the statutory elements of an offense both in the abstract under <u>Blockburger</u> and as applied to the facts of the particular case under <u>Duchac</u>, courts consider other factors relevant to ascertaining legislative intent. These factors include the following: (1) whether there were multiple victims involved;[16] (2) whether several discrete acts were involved;[17] and (3) whether the evil at which each offense is directed is the same or different.[18]

As we noted in <u>Goins</u>, "generally, if a criminal episode involves several victims who have personally been victimized, the evidence could sustain multiple convictions." <u>Goins</u>, 705 S.W.2d at 651 (<u>citing</u> <u>State v. Irvin</u>, 603 S.W.2d 121 (Tenn. 1980)(holding that killing more than one person in a single automobile accident justified multiple homicide convictions)). In <u>Goins</u>, however, we held that the multiple convictions for concealing stolen property violated double jeopardy because there was no evidence that the defendant concealed the stolen items on several separate occasions. <u>Id.</u> at 651-52. Discrete acts can justify multiple convictions. <u>See</u>, <u>e.g.</u>, <u>Phillips</u>, 924 S.W.2d at 662 (three discrete acts of sexual penetration supported three aggravated rape convictions).

---

[16]<u>State v. Irvin</u>, 603 S.W.2d 121 (Tenn. 1980).

[17]<u>State v. Pelayo</u>, 881 S.W.2d 7, 12-13 (Tenn. Crim. App. 1994); <u>State v. Warren</u>, 750 S.W.2d 751, 754 (Tenn. Crim. App. 1988).

[18]<u>State v. Lowery</u>, 667 S.W.2d 52, 54 (Tenn. 1984).

However, a single act or assault may limit the State to a single conviction. See Goins, 705 S.W.2d at 651 (no evidence that the defendant concealed the stolen property on more than one occasion); Grant v. State, 213 Tenn. 440, 374 S.W.2d 391, 393 (1964)(advising four clients to commit perjury as a group subjected defendant to one contempt charge); State v. Pelayo, 881 S.W.2d, 7, 12-13 (Tenn. Crim. App. 1994) (single assault involving two separate stab wounds could not support two separate assault convictions).

A single act and single victim nevertheless justified two convictions in State v. Brittman, 639 S.W.2d 652 (Tenn. 1982), because the elements of aggravated rape and incest were distinct and because the statutes served different purposes:

> one protects children under the age of 13 years from sexual penetration and the other prohibits marriage or sexual intercourse between persons related within the prohibited degrees.

Id. at 654.

In sum, resolution of a double jeopardy punishment issue under the Tennessee Constitution requires the following: (1) a Blockburger analysis of the statutory offenses; (2) an analysis, guided by the principles of Duchac, of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes. None of these steps is determinative;

17

rather the results of each must be weighed and considered in relation to each other.




IV


With these requirements in mind, we must now determine whether Denton's convictions for carrying a weapon and aggravated assault are the "same" for double jeopardy purposes. We then determine whether Denton's convictions for attempted voluntary manslaughter and aggravated assault are the "same" for double jeopardy purposes.


We begin with <u>Blockburger</u> and <u>Duchac</u>. The offense of aggravated assault, as charged in Denton's case, requires proof that Denton intentionally, knowingly, or recklessly caused bodily injury to the victim by use of a deadly weapon.[19] The offense of possessing a weapon with the intent to use it in the commission of an offense[20] requires proof that Denton possessed a deadly weapon and that he intended to employ it in the commission of an offense.

---

[19]Tenn. Code Ann. § 39-13-102(a)(1)(B) (1991). Aggravated assault is an assault as defined in § 39-13-101 where either the victim suffers "serious bodily injury," as defined at § 39-11-106(a)(33), or the defendant uses or displays a deadly weapon. In this case, the prosecution could have proceeded under either theory but chose to rely on the use of a deadly weapon.

[20]Tenn. Code Ann. § 39-17-1307(c)(1) (1991).

As defined by the indictment in this case, the weapon offense was a lesser included offense of the aggravated assault under the Blockburger test. Further, to use a deadly weapon, Denton necessarily had to possess it. To intentionally or knowingly cause bodily injury by using a deadly weapon, Denton necessarily had to intend to use the deadly weapon. Thus, in this case, the evidence submitted to prove the aggravated assault charge by necessity established the charge of possessing a weapon with the intent to use it in the commission of an offense. Under these circumstances, the weapon offense is a lesser included offense of the aggravated assault. Under Blockburger and Duchac, the two convictions cannot be sustained; therefore, we reverse the conviction for possessing a weapon intended for use in the commission of an offense and dismiss the indictment.

As stated earlier, the offense of aggravated assault, as charged in Denton's case, requires proof that Denton intentionally, knowingly, or recklessly caused bodily injury to the victim by use of a deadly weapon. The offense of attempted voluntary manslaughter requires proof: (1) that Denton unlawfully attempted to kill the victim; (2) that the attempt to kill was intentional or knowing; and (3) that the attempted killing resulted from a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.[21] Aggravated

---

[21]Tenn. Code Ann. §§ 39-12-101 (attempts), 39-13-211(a) (voluntary manslaughter) (1991). Denton was charged with attempted second-degree murder. Attempted voluntary manslaughter is a lesser

assault requires proof that Denton caused bodily injury; whereas, attempted voluntary manslaughter does not.  Attempted voluntary manslaughter requires proof that Denton intended to kill his victim; whereas, aggravated assault does not.  Therefore, application of the Blockburger test indicates that the legislature intended to allow separate punishment for each of these offenses. As noted earlier, however, our analysis does not end here.

Because the evidence in this case consisted of a single attack by Denton on the victim, the State necessarily relied on the same evidence to establish both the aggravated assault and the attempted voluntary manslaughter.  Thus, application of Duchac indicates that the two offenses are the "same" for double jeopardy purposes.  Further, there is one discrete act and one victim. Finally, the evil at which the offenses are directed is the same. Both aggravated assault and attempted voluntary manslaughter are intended to deter assaultive-type conduct.  The common purpose of these statutes weighs in favor of a conclusion that these two offenses are the "same" for double jeopardy purposes.

Notwithstanding the application of Blockburger, the particular facts giving rise to Denton's convictions and the common purpose served by the two statutes lead us to conclude that imposition of multiple convictions and sentences upon Denton

included offense of that charge.  State v. Stephenson, 878 S.W.2d 530, 549 (Tenn. 1994); Howard v. State, 506 S.W.2d 951, 954 (Tenn. Crim. App. 1973).

20

violates the double jeopardy clause of our state constitution.  It is unreasonable to assume that the legislature intended that a defendant who commits one assault on a single victim be convicted of both aggravated assault and attempted homicide.

Furthermore, the legislature has provided some guidance in this area:  "[w]hen the same conduct may be defined under two (2) or more specific statutes, the person may be prosecuted under _either_ statute unless one (1) specific statute precludes prosecution under another."  Tenn. Code Ann. § 39-11-109(b) (1991)(emphasis added).  We think that if the legislature had intended dual prosecution, it would have specifically provided that persons accused of conduct defined under two statutes could be prosecuted under "both," instead of "either" statute.  The legislature's choice of terminology is indicative of its intent that the State be limited to a single conviction under circumstances where a single act exposes an accused to prosecution under more than one statute.[22]

_____

[22]We find the phrase "may be _prosecuted_ under either" somewhat troublesome, since that language could be interpreted as permitting the State to indict on only one offense where two statutory offenses may apply to the facts presented in the case.  We reject such an interpretation.  In _Ohio v. Johnson_, the Supreme Court specifically addressed this issue:

> While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.

467 U.S. 493, 500 (1984).  Furthermore, a contrary intent was exhibited by the legislature in its adoption of Tenn. R. Crim. P.

21

Based on the facts before us, we conclude that only one conviction can be sustained. Accordingly, we affirm Denton's conviction and sentence for aggravated assault. The conviction for attempted voluntary manslaughter is reversed, and that indictment is dismissed.

V

In sum, <u>Anthony</u> did not announce a new rule of constitutional law. Therefore, it does not apply retroactively and has no application to the circumstances of Brown's convictions. Because the remainder of Brown's issues are procedurally barred from consideration by this Court, the judgment of the Court of Criminal Appeals dismissing his petition is affirmed in all respects.

Article I, § 10 of the Tennessee Constitution bars Denton's conviction for possessing a weapon intended for use in the

---

8(a), which requires that two or more offenses based on the same conduct or criminal episode be joined in one indictment. Our courts have consistently upheld the joinder of such offenses. <u>See</u> <u>State v. Beard</u>, 818 S.W.2d 376, 378 (Tenn. Crim. App. 1991)(<u>citing</u> to pre-Rule cases <u>Galbreath v. State</u>, 187 Tenn. 669, 216 S.W.2d 689 (1948), and <u>Halquist v. State</u>, 489 S.W.2d 88 (Tenn. Crim. App. 1972)). Under the particular facts of this case and to avoid the dangers of multiplicity, (<u>see</u> <u>State v. Desirey</u>, 909 S.W.2d 20, 27 (Tenn. Crim. App. 1995)), the trial court should have instructed the jury that they could convict on only aggravated assault or attempted voluntary manslaughter. We think such error is cured by our ruling in this case reversing the conviction for attempted voluntary manslaughter.

commission of an offense because in this case this offense is a lesser included offense of aggravated assault. Further, we find that Denton's conviction for attempted voluntary manslaughter must also be reversed because under the facts of this case it is a violation of Article I, § 10 to convict Denton twice for a single attack on a single victim. The indictments setting forth these respective offenses are dismissed. The judgment of the Court of Criminal Appeals is affirmed in part for reasons other than those expressed in the intermediate court's opinion and reversed in part.

_____
ADOLPHO A. BIRCH, JR., Chief Justice

CONCUR IN BROWN:  Anderson, Drowota, Reid, White, JJ.
CONCUR IN DENTON: Anderson, Drowota, Reid, JJ.
                  White, J., n.p.

23