IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 8, 2000

## STATE OF TENNESSEE v. JAMES L. COLE

**Appeal from the Criminal Court for Shelby County**
**No. 97-09527-28     Chris Craft, Judge**

---

**No. W2000-00056-CCA-R3-CD - Filed December 20, 2000**

---

The Defendant, James L. Cole, appeals as of right from his first degree felony murder conviction. On appeal, he asserts that the evidence was insufficient to support his conviction. We hold that the evidence was sufficient to support the Defendant's conviction; accordingly, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

Tony N. Brayton and Larry Nance, Assistant Public Defenders,  Memphis, Tennessee, for the appellant, James L. Cole.

Paul G. Summers, Attorney General and Reporter; R. Stephen Jobe, Assitant Attorney General; William L. Gibbons, District Attorney General; and Jerry Harris, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant was indicted for the offenses of first degree premeditated murder, first degree felony murder, and especially aggravated robbery, all arising from the death of Mack Henderson, also known as Mark Henderson and "Elvis." After a jury trial, the Defendant was convicted of the lesser-included offense of second degree murder, first degree felony murder as charged, and especially aggravated robbery as charged. The trial court merged both the second degree murder conviction and the especially aggravated robbery conviction with the first degree felony murder conviction, and it imposed a life sentence.[1]

---

[1]At trial, the State agreed with the trial court that it was proper to merge the especially aggravated robbery conviction with the felony murder conviction. On appeal, the State points out in a footnote in its brief that it is settled

(continued...)

The proof at trial established that the victim, commonly known as "Elvis," lived in a rooming house in Memphis. He sporadically did some cleaning work for the owner of a mechanic shop, and he mostly kept to himself. On May 5, 1997, the victim died as a result of blunt force trauma to the head. The medical examiner testified that the victim's injuries were caused by a minimum of three separate blows to the head. The blows caused multiple fractures to the victim's skull, resulting in the complete splitting of the skull. A thirty-inch iron pipe was found next to the victim's body, and the medical examiner testified that the pipe could have caused the victim's injuries. However, the medical examiner also testified that numerous other objects could have caused the victim's injuries. The pipe was tested for fingerprints, but none were detected. Officers with the Memphis Police Department established that it was not surprising to find no fingerprints given the rusted surface of the pipe. The pipe was not tested for the presence of any type of human tissue.

At the time of the victim's death, Willie Roosevelt Perkins and Timothy Young both lived at the same rooming house as the victim. They both knew the victim and the Defendant, whom they identified in court. Mr. Perkins testified that on the evening of May 5, 1997, he saw the victim sitting on a concrete block in the backyard of the residence. Mr. Perkins was standing at the top of the back steps of the rooming house. He said that he heard "the first two licks," and then he saw the Defendant strike the victim in the head with an iron pipe. He said that the Defendant hit the victim in the head two times and once on the left side of the face. The Defendant then took the victim's billfold from his pocket. As the Defendant started to leave through an alley, Mr. Perkins saw the Defendant hold up the victim's money and say, "I hit the jackpot."

Mr. Perkins did not call the police because he "didn't want to be involved." Instead, he left the area, after telling Timothy Young, who was also in the backyard, "I didn't see nothing." Mr. Perkins did not say anything else to Mr. Young. Mr. Perkins did not tell the police what he saw until the police came to talk to him.

Mr. Young testified that he was sitting on a television set in the backyard, when he heard the Defendant ask the victim for his "pouch," which was around the victim's waist. The Defendant then struck the victim with a pipe or a stick. Mr. Young saw the Defendant hit the victim in the head and in the left arm. After hitting the victim, the Defendant took the victim's "pouch." Mr. Young testified that it was common knowledge that the victim received a check on the first of the month. Mr. Young remembered that Mr. Perkins said something to him after the incident, but could not remember what Mr. Perkins said to him.

[1](…continued)
law that a defendant may properly be convicted of both felony murder and the underlying felony. See State v. Ralph, 6 S.W.3d 251, 256 (Tenn. 1999); State v. Denton, 938 S.W.2d 373, 379 n. 14 (Tenn. 1996). However, the State agreed to the erroneous merger in the trial court, an action that bars it relief in this appeal. See T.R.A.P. 36(a). Accordingly, the issue of whether the trial court erred by merging the especially aggravated robbery conviction with the felony murder conviction is not before us. Our opinion considers only whether the evidence was sufficient to support the felony murder conviction.

On cross-examination, Mr. Young admitted that when he first gave a statement to the police, he did not tell the police that he saw the Defendant hit the victim. Instead, he told the police that he heard the fence shaking, that he heard a "popping sound," and that he then saw the Defendant coming from the area of the noise. The Defendant "pointed his finger at me and shook his finger at me. Then he got further up through the alley, and he held up something, and then he hollered out, 'I told that boy to move. I . . . told that boy to move when I was staying here.'" However, Mr. Young maintained at trial that in addition to what he told the police, he saw the Defendant hit the victim.

Anthony Ellis testified for the defense. He testified that he was at the rooming house on the evening of May 5, 1997 and that he saw the victim murdered. He said that the person who struck the victim was not the Defendant; he claimed that he had not seen the Defendant before. He also testified that he saw someone whom he did not know give $200 to Mr. Perkins. However, Mr. Ellis admitted giving three false statements to the police. In the first statement, Mr. Ellis falsely told the police that his name was Timothy Morris. In the second statement, Mr. Ellis falsely told the police that the murderer was Steve Bland. He explained at trial that he told the police Steve Bland was guilty of the murder because Mr. Bland had "cut" a friend of his. He testified that Steve Bland did not kill the victim; he just lied to the police. Mr. Ellis admitted that he had been previously convicted of automobile burglary and burglary of a building.

The Defendant argues that the evidence was insufficient to support his conviction. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

To convict the Defendant of first degree felony murder, the State was required to prove that the Defendant killed the victim in the perpetration of a particular enumerated felony, which in this

case was robbery. See Tenn. Code Ann. § 39-13-202(a)(2). Before a defendant can be convicted of felony murder, the intent to commit the underlying felony must exist prior to or concurrent with the killing. See State v. Buggs, 995 S.W.2d 102, 107 (Tenn. 1999). The Defendant asserts that there was insufficient evidence to establish the identity of the Defendant as the person who killed the victim and that there was insufficient evidence that the Defendant had a prior intent to rob the victim. We disagree. Both Mr. Perkins and Mr. Young identified the Defendant as the person who struck the victim with a pipe. Mr. Young heard the Defendant demand the victim's "pouch" prior to hitting him with the pipe, and Mr. Young testified that it was common knowledge that the victim received a check on the first of the month. The killing took place on the 5th day of the month. Mr. Perkins testified that he saw the Defendant take the victim's billfold, and he saw the Defendant hold up the victim's money and say, "I hit the jackpot." While there may have been some inconsistencies in the testimony of Mr. Perkins and Mr. Young, and while Mr. Ellis testified that the Defendant did not kill the victim, these conflicts were matters for the resolution of the jury. From the evidence presented, we believe that any rational juror could have found beyond a reasonable doubt that the Defendant killed the victim during the perpetration of a robbery. Thus, the evidence was sufficient to support the conviction.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

-4-